OPINION OF THE COURT
Barbara Jaffe, J.
Elliot Sash, by order to show cause, moves for an order directing the return of property seized from his home pursuant to a search warrant. Filing papers in opposition to the motion were the Property Clerk of the New York City Police Department (Property Clerk) and the Westchester County District Attorney’s Office (Westchester DA). Upon the court’s consideration of the parties’ oral arguments and submissions, the motion is denied.
I. Background
On April 27, 2001, Sash was arrested and a search warrant was executed at his home at 21 Odell Avenue in Yonkers. The seized property consists of thousands of allegedly forged federal, state and local law enforcement uniforms and identification insignia, including shields, badges, cards, passes and patches, and equipment allegedly used to manufacture such items. The property was taken into the custody of the Property Clerk and listed in 21 vouchers.
On April 28, 2001, Sash was charged in a felony complaint filed in the Criminal Court of the City of New York with 11 counts of Penal Law § 170.25 (criminal possession of a forged instrument), one count of Penal Law § 190.27 (criminal sale of a police uniform), and 10 counts of Administrative Code of the City of New York § 14-107 (unlawful use of a police uniform or emblem). Soon thereafter, the United States Attorney’s Office for the Southern District of New York and the Westchester DA also launched investigations into Sash’s conduct.
On or about November 1, 2001, all of the charges contained in the felony complaint were dismissed pursuant to Criminal Procedure Law § 30.30 (1) (a), without opposition of the New York DA. While the record is unclear as to the status of the *197 federal investigation, the Westchester DA’s investigation continues with the goal of presenting the seized property to the grand jury.
On January 22, 2002, Sash filed with the Property Clerk a demand for the release of the seized property pursuant to 38 RCNY chapter 12, subchapter B (Rules), thereby obtaining the release of the items listed on voucher number K797486. The Property Clerk retained the rest of the vouchered property as Sash had not furnished a district attorney’s release for that property.
II. Contentions of the Parties
Sash asserts that this court has jurisdiction to order the return of property because a judge of this court issued the search warrant that authorized the seizure. He claims that the property has been wrongfully withheld from him for an unreasonable length of time following the dismissal of the New York County charges. His lawyer affirms that at Sash’s arraignment in New York County, Sash told the court that the property seized constituted merchandise which he was authorized to sell to “NYPD tailors,” that the property was part of his collection of police department memorabilia, and that the uniforms were part of his “Screen Actors Guild wardrobe.” (Affirmation of Jeffrey T. Schwartz, Esq., in support of order to show cause, dated Mar. 7, 2002, 4.) Sash also contends that the seized property constitutes investigatory rather than arrest evidence and that it is, therefore, not subject to the Rules governing the return of seized property held by the Property Clerk.
The Property Clerk argues that this court has no jurisdiction to order the release of the property, and that release may be obtained only pursuant to the Rules or Administrative Code § 14-140 et seq., neither of which justifies release given the property’s nature as contraband nor as the instrumentality of crimes, and the pendency of the Westchester investigation.
III. Analysis
A. Jurisdiction
The Criminal Court of the City of New York has jurisdiction over crimes and other violations of law, with certain limits not pertinent here. (NY Const, art VI, § 15 [c]; NY City Crim Ct Act § 31; CPL 10.30.) It has no inherent equity powers beyond those specifically provided for in the Criminal Procedure Law. (See People v Fysekis, 164 Misc 2d 627, 628 [Crim Ct, Bronx *198 County 1995] [criminal courts do not possess any inherent equity powers and thus are not authorized to declare desk appearance tickets null and void]; People v Salzone, 98 Misc 2d 131 [Crim Ct, Kings County 1978] [criminal court lacks equity jurisdiction to order property clerk to return funds taken from plaintiff on his arrest on gambling charges that were subsequently dismissed].)
With respect to civil matters, jurisdiction is vested exclusively in the Civil Court of the City of New York (NY Const, art VI, § 15 [b]), or in the Civil Term of the Supreme Court (NY Const, art VI, § 7). It is in those courts, and not in this court, that a common-law action for replevin may be commenced upon the termination of the criminal action. (See Boyle v Kelley, 42 NY2d 88 [1977]; Salzone, 98 Misc 2d at 133.) Petitions for declaratory judgments and writs of mandamus may be commenced only in the Supreme Court. (CPLR 3001, 7804 [b].)
The court does, however, have jurisdiction to order the release of property held by the property clerk pursuant to Administrative Code § 14-140 (c). (See discussion, infra, III C.) Consequently, absent any inherent equity powers beyond those specified in the Criminal Procedure Law, it appears that this court’s jurisdiction to order the return of Sash’s property is limited to that set forth in the Criminal Procedure Law and the Administrative Code.
B. Release Pursuant to the Criminal Procedure Law
The Criminal Procedure Law authorizes this court to order the return to a defendant of property seized pursuant to a search warrant upon the defendant’s request where the court has granted a motion to suppress evidence pursuant to Criminal Procedure Law § 710.20 (1), and “when such property is not otherwise subject to lawful retention.” (CPL 710.70 [1]; People v Hylton, 55 AD2d 684 [2d Dept 1976].) Otherwise, Criminal Procedure Law § 690.55 requires that:
“1. Upon receiving property seized pursuant to a search warrant, the court must either:
“(a) Retain it in the custody of the court pending further disposition thereof pursuant to subdivision two or some other provision of law; or
“(b) Direct that it be held in the custody of the person who applied for the warrant, or of the police officer who executed it, or of the governmental or official agency or department by which either such public servant is employed, upon condition that *199 upon order of such court such property be returned thereto or delivered to another court.
“2. A local criminal court which retains custody of such property must, upon request of another criminal court in which a criminal action involving or relating to such property is pending, cause it to be delivered thereto.”
This court’s jurisdiction to order the return of the property is thus narrowly limited by Criminal Procedure Law §§ 690.55 and 710.70 (1). As Sash never moved to suppress the evidence in the New York County case, and in light of the pending West-chester investigation, Sash has failed to establish that the property is not properly retained by the Property Clerk. Consequently, he has not satisfied the statutory requirements for return of the property and is not entitled to its release pursuant to Criminal Procedure Law § 710.70 (1).
C. Release Pursuant to Administrative Code § 14-140 (c)
Pursuant to Administrative Code § 14-140 (c), a person who has been arrested may apply to a judge of the criminal court for an order directing the release of property “alleged to have been feloniously obtained, or to be the proceeds of crime.” Release may be ordered only where the court is satisfied from the evidence presented: (1) that “the person arrested is innocent of the offense alleged”; and (2) “that the property rightfully belongs to him or her.” (Administrative Code § 14-140 [c].)
Given the Administrative Code’s requirement of an adjudication as to guilt or innocence, “almost no criminal court judge (or justice in the criminal term of the New York Supreme Court) will order such return.” (McClendon v Rosetti, 460 F2d 111, 114 [2d Cir 1972].) However, the court in People v Braunhut (101 Misc 2d 975 [Crim Ct, Queens County 1979]) ordered the release of property pursuant to the Administrative Code. Having dismissed a misdemeanor complaint charging the defendant with criminal possession of a weapon in the fourth degree on the ground that the property possessed by the defendant was not contraband, the court held that the defendant had established his innocence of the charged offense and that he rightfully possessed the property. (Braunhut, 101 Misc 2d 975; but cf. Matter of Property Clerk of N.Y. City Police Dept, v Ferris, 77 NY2d 428, 430 [1991] [outcome of underlying criminal charges irrelevant to outcome of civil forfeiture proceeding given differing standards of proof].)
Although Sash has not sought release of the property pursuant to the Administrative Code, to the extent that he intended *200 to make such a claim, the court observes that his submissions on the motion form an insufficient factual basis for finding that he is innocent of the New York County charges or that he is in rightful possession of the property. The hearsay representations contained in his lawyer’s affirmation are of little probative value and neither the dismissal of the New York County case nor the discontinuance of the federal investigation constitutes a decision on the merits, much less a ground for finding innocence or rightful possession. (See Ferris, 77 NY2d 428.)
For all of these reasons, this court cannot find that Sash is innocent of the charges or that the property is rightfully his regardless of the five months that have passed since the dismissal of the New York County charges. Therefore, Sash is not entitled to relief pursuant to the Administrative Code.
D. Release Pursuant to the Rules of the City of New York
Property seized as evidence in a criminal investigation is held in the custody and control of the property clerk. (38 RCNY ch 12, subch B.) A criminal defendant against whom a criminal action has terminated may seek the release of such property by making a demand of the property clerk pursuant to the Rules. (38 RCNY ch 12, subch B.)
The Rules are the codification of a consent decree known as the “final McClendon order” (70 Civ 3851 [SD NY 1993]), the product of federal litigation challenging the constitutionality of Administrative Code former § 435-4.0 (now Administrative Code § 14-140). (See McClendon, 460 F2d 111.) Subdivision (f) of former section 435-4.0 had placed upon claimants the burden of proving lawful title to seized property and that the property was used in a lawful manner. (Id. at 115.) The burden of proof remained on such claimants even though the noncontraband property seized from them was not related to any criminal proceeding, or, if related, the proceeding had been terminated. Even where the property, once needed as evidence in a criminal proceeding, was no longer needed, claimants still bore the burden of proof. (Id. at 116.)
The McClendon court thus struck the provision, finding that it violated due process as applied to individuals from whose possession noncontraband property was seized. As the Court of Appeals observed, McClendon established the principle that “due process requires that the property be returned upon demand unless the government can establish a new basis for its detention.” (Matter of DeBellis v Property Clerk of City of N.Y., 79 NY2d 49, 57 [1992]; see also Preiser, Practice Com- *201 mentarles, McKinney’s Cons Laws of NY, Book 11 A, CPL 690.55, at 543-544 [1995] [“because of constitutional due process considerations it is not necessary to bring plenary action: claimant need only make a demand for return of the property and the custodian must either return the property or commence suit to retain it” (citations omitted)].)
The Rules now provide that where there has been an arrest prior to, simultaneous with, or subsequent to the taking or obtaining of property, the property clerk shall release the claimant’s noncontraband property upon timely demand, production of proper identification, and the submission of a written release from the district attorney covering the vouchered property. (38 RCNY 12-35.) Investigatory property unconnected to an arrest, however, is exempt from the Rules. (38 RCNY 12-38.)
With respect to the district attorney’s authority to release seized property, the Rules provide that following the termination of the criminal proceeding, the district attorney must provide a release unless the property must be retained as evidence “due to * * * an ongoing identifiable criminal investigation.” (38 RCNY 12-34 [d] [4].) Where a request for a written release from an assistant district attorney is denied, a claimant may seek review of the denial by a supervising assistant district attorney. (38 RCNY 12-34 [e]). Upon proper demand by a claimant, if the property clerk seeks forfeiture of the property, it must bring an action for the claimant to be declared an unlawful claimant. (38 RCNY 12-36.) If the property clerk neither returns the property nor seeks its forfeiture, the claimant’s recourse is to file a Civil Practice Law and Rules article 78 petition for a writ of mandamus (see e.g. Matter of DeBellis, 79 NY2d 49), which may be sought only in the State Supreme Court, not in this court (see discussion, supra, III A).
As the Rules vest complete authority to release property in the district attorney, this court has no authority to order release pursuant to the Rules. Additionally, given this court’s limited jurisdiction, it is not authorized to review the decision of the district attorney.
With respect to Sash’s claim that the return of the property is not governed by the Rules, there is no dispute that the property was seized from Sash at the time of his arrest and in connection with the arrest. Thus, the vouchering officer’s apparently ministerial error in characterizing the property as investigatory evidence by checking off a box so marked on each of the vouchers is of no moment (see People v Morgan, *202 162 AD2d 723 [2d Dept 1990] [police detective’s failure to provide receipt at time of search a mere ministerial error which did not taint otherwise valid search]), and Sash has thus failed to show that a demand for the property seized from him is not governed by the Rules. The court also observes that Sash has already regained possession of some of the property pursuant to the Rules.
IV. Conclusion
For all of these reasons, the Rules apparently constitute Sash’s sole avenue of relief. (See also Matter of Marra v Hynes, 221 AD2d 539, 540 [2d Dept 1995] [mandamus does not lie where property seized pursuant to search warrant based on probable cause and held in connection with ongoing criminal investigation].) Accordingly, his motion for an order releasing the property seized pursuant to the search warrant is denied.
[Portions of opinion omitted for purposes of publication.]